Ernest K. LEVY

v.

**OFFICE OF the LEGISLATIVE AUDITOR, et al.**

Civil Action No. 04–195–FJP–CN.

United States District Court, M.D. Louisiana.

Aug. 21, 2006.

---

Joseph Jerome Long, Baton Rouge, LA, for Ernest K. Levy.

David Alexander Young, David Glen Sanders, John S. Coulter, Louisiana Department of Justice, Houston T. Penn, Baton Rouge, LA, for Grover Austin.

1. Rec. Doc. Nos. 59 & 71.

2. Rec. Doc. No. 86.

3. —— U.S. ——, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

### RULING

FRANK J. POLOZOLA, District Judge.

This matter is again before the Court on defendants' motions for summary judgment[1] and the Court's order[2] to brief the applicability of *Garcetti v. Ceballos.*[3] The issue before the Court is whether plaintiff's claims must be dismissed pursuant to the United States Supreme Court's ruling in *Garcetti.* Plaintiff claims his rights under the First Amendment were violated by defendants because the demotion he received was in retaliation for a speech he made at a Toastmasters Program on March 1, 2004, in which he criticized his employer's office policy and the conduct of fellow employees.

In response to the Court's order and in support of their motions for summary judgment, defendants argue that plaintiff delivered the Toastmasters speech pursuant to his official duties as an Office of the Legislative Auditor ["OLA"] employee. Defendants further contend that plaintiff was not speaking as a citizen for First Amendment purposes, therefore, the Constitution does not insulate his communication from discipline by the OLA. Defendants further argue that the facts of this case are in accord with the holding in *Garcetti* and summary judgment should be granted in favor of the defendants, dismissing plaintiff's claim with prejudice.

Plaintiff attempts to distinguish *Garcetti* by arguing that his speech was not part of his official duties as a supervisor at the OLA. Plaintiff contends that he delivered his Toastmasters speech, criticizing OLA policy, in his capacity as a citizen.[4] Thus,

4. It is disturbing to the Court that plaintiff argues he was acting as a private citizen when he testified under oath that Toastmasters speeches were required as part of his employment duties.

plaintiff concludes that his speech is protected by the First Amendment and summary judgment would be improper. The Court disagrees with plaintiff's arguments and finds that *Garcetti* is applicable under the facts of this case.

## I. *Discussion of Garcetti*

In *Garcetti*, a deputy district attorney claimed that he was subjected to adverse employment actions in retaliation for engaging in protected speech, *i.e.*, for writing a disposition memorandum in which he recommended dismissal of a criminal case based on alleged governmental misconduct. The United States Supreme Court has held that public employees are citizens with First Amendment freedom of speech rights and "[s]o long as employees are speaking about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."[5] However, in *Garcetti*, the controlling factor was that the plaintiff's "expressions were made pursuant to his duties as a calendar deputy." The Court noted "[t]hat consideration—the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case—distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline."[6] Therefore, the Court further held that, "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate

their communications from employer discipline."[7]

Justice Kennedy, writing for the majority, explained:

Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do. It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned.[8]

The Court also addressed the fact that government employers have a significant interest in controlling speech made by an employee in his or her professional capacity. The Court stated as follows:

Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission. Ceballos' memo is illustrative. It demanded the attention of his supervisors and led to a heated meeting with employees from the sheriff's department. If Ceballos' superiors thought his memo was inflammatory or misguided, they had the authority to take proper corrective action.[9]

---

5. *Id.* at 1958, citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

6. *Id.* at 1960.

7. *Id.*

8. *Id.*, referencing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).

9. *Id.*

To hold otherwise "would commit state and federal courts to a new, permanent, and intrusive role, mandating judicial oversight of communications between and among government employees and their superiors in the course of official business."[10] The Court further clarified:

> When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balance of the competing interests surrounding the speech and its consequences. When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny. To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.[11]

The proper application of the Court's precedents called for the conclusion that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities."[12]

The Court mentioned that the parties in *Garcetti* did not dispute that the plaintiff's communication was made pursuant to his employment duties. Thus, the Court stated that it had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate."[13] The Court, however, instructed the proper inquiry into the scope of an employee's duties is a practical one:

Formal job descriptions often bear little resemblance to the duties an employee is actually expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.[14]

## II. *Application of Garcetti to the Plaintiff's Speech*

■ In the instant case before the Court, plaintiff insists that his expressions were not made pursuant to his official duties as an OLA employee, but rather were made pursuant to his private membership in the Toastmasters Program. Plaintiff bases his argument on the following facts: the OLA had no control over the Toastmasters Program, the OLA had no control over the content of OLA employees' speeches made to the Toastmasters Program, plaintiff paid dues to the Toastmasters Program, and the speeches were not made on OLA property. Plaintiff also argues that the presence of other OLA employees at his Toastmasters speech is irrelevant to the Court's determination of the scope of his official duties. However, the record clearly does not support the plaintiff's contentions.

The OLA is a constitutionally-mandated[15] and legislatively-created[16] state agency whose purpose is to provide the Louisiana government with audit and other services and to provide assurances to the Louisiana Legislature, the taxpayers of Louisiana, grantors, and other interested parties that Louisiana government is

---

10. *Id.* at 1961.

11. *Id.*

12. *Id.* at 1961.

13. *Id.*

14. *Id.* at 1962.

15. Art. 3, § 1(i) of the 1974 Louisiana Constitution.

16. La. R.S. § 24:511, *et seq.*

operating in an economical and efficient manner within the many restrictions which regulate governmental operations.[17] Therefore, like the plaintiff in *Garcetti*, plaintiff here is a public employee.

Beginning in 1996, the OLA identified the Toastmasters Program as one which could assist its employees in their professional development and growth by giving the employee practical experience in effective communication.[18] This objective is of the utmost importance to the OLA's operations, as auditors are frequently called upon to go before state and federal governmental bodies to provide sworn testimony concerning audits upon which they work.[19] This OLA policy required extensive participation in the Toastmasters Program by Senior Auditors, which included the plaintiff.[20] More specifically, the operational handbook provided: [21]

> Participation in Toastmasters is part of the office training curriculum for Senior Auditors I. Effective August 1, 2002, attainment of the Competent Toast Master designation is required for promotion to Senior Auditor II and above. In addition to having been awarded a CTM by Toastmasters International, the staff member must have served in every role of Toastmasters at least once and served as an evaluator at least 7 times.

The Court is surprised that plaintiff would now argue that giving speeches in the Toastmasters Program was not part of his official duties. Not only does the operational handbook state that an employee such as plaintiff is required to participate in the Toastmasters Program, the plaintiff testified in his deposition that his participation in the Toastmasters Program, including his March 1, 2004, speech, was required by the Legislative Auditor as part of his official duties as an OLA employee. Plaintiff explicitly stated in his deposition that he "gave a Toastmaster's speech **which was required by the Legislative Auditor,**[22] as [ his] ninth speech, and it was entitled 'We Need Education on Office Policy.' "[23] Thus, the overwhelming evidence in this case clearly shows that plaintiff was acting within the scope of his duties as a public employee when he gave the speech which caused him to be disciplined. The fact that Levy may have "experienced some personal gratification"[24] from writing and making this speech is totally immaterial. As the Court in *Garcetti* noted, plaintiff's First Amendment rights do not depend on his job satisfaction.[25]

The Court finds that the OLA was within its rights as a public employer to discipline plaintiff for his speech made pursuant to his official duties as an employee without violating his constitutionally protected rights. The Court further finds that even if plaintiff's participation in the Toastmasters Program may not have been part of his formal job description, the rec-

**17.** Rec. Doc. No. 87, Exhibit A, Preface of the OLA's July 1996 Operational Handbook.

**18.** Rec. Doc. No. 87, Exhibit E, Larry Fontenot (Research and Training Officer) March 21, 2006, Memorandum.

**19.** Rec. Doc. No. 87, Exhibits B (Jennifer Schaye Affidavit), C (Daryl Purpera Affidavit), and D (Grover Austin Affidavit).

**20.** Rec. Doc. No. 87, Exhibits F(OLA July 1996 Operational Handbook), G (Dr. Dan Kyle, Legislative Auditor, July 26, 2002, Mem-

orandum), H (OLA July 2002 Operational Handbook), and I (July 2002 Legislative Auditor Employee Handbook).

**21.** *Id.*

**22.** Emphasis supplied by defendants.

**23.** Rec. Doc. No. 87, Exhibit J, June 30, 2005, Deposition of Ernest Levy.

**24.** *Garcetti,* at 1960.

**25.** *Id.* at 1960.

ord clearly shows that such participation was required and within the scope of plaintiff's professional duties. "Formal job descriptions often bear little resemblance to the duties an employee is actually required to perform." [26]

Because plaintiff gave this speech pursuant to his official duties, plaintiff did not act as a citizen for First Amendment purposes under *Garcetti*. Thus, plaintiff's First Amendment rights were not violated because he was later disciplined by OLA. Therefore, the Court finds as a matter of law under the facts of this case that defendants' motions for summary judgment should be granted.[27]

### III.  *Conclusion*

For the reasons set forth above, under *Garcetti, et al. v. Ceballos*, plaintiff's First Amendment free speech retaliation claims shall be dismissed.

Therefore:

■ IT IS ORDERED that defendants' Motions for Summary Judgment—Basis of Action, Speech & Constructive Discharge [28] are hereby GRANTED.

Plaintiff's claims are hereby DISMISSED with prejudice.

Judgment shall be entered accordingly.

---

**26.**  *Id.* at 1962.

**27.**  In the alternative, the Court finds that even if *Garcetti* was inapplicable and plaintiff expressed himself as a citizen for First Amendment purposes, the balance of plaintiff's interest in commenting on matters of public concern against the OLA's interest in maintaining the efficiency of public service through its employees weighs heavily in favor of the OLA. Summary judgment should also be granted whether *Garcetti* applies or not.

**28.**  Rec. Doc. No. 71.  Defendants' Motion for Summary Judgment—Qualified Immunity (Rec.Doc. No. 59) is now moot.  However, the Court finds in the alternative that even if plaintiff's speech is in fact constitutionally protected, defendants are entitled to the affirmative defense of qualified immunity because plaintiff's asserted rights were not clearly established.  See *Garcetti*, 126 S.Ct. at 1956. The defendants have established all of the elements required for qualified immunity to apply under the facts of this case.